IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| VINICIO J. GARCIA #1828198 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv067 |
| BOBBY LUMPKIN, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Vinicio Garcia, an inmate of the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Relevant Procedural History and Alleged Facts**

Plaintiff filed his original complaint on February 16, 2022. (Dkt. #1.) On March 2, 2022, the Court observed that the complaint was not on an approved form and lacked material factual allegations required to state a viable claim. (Dkt. #5.) Accordingly, the Court ordered him to file an amended complaint to allege specific facts to support his claim. (*Id.*)

Plaintiff filed his amended complaint on April 18, 2022. (Dkt. #19.) Before the amended complaint was screened by the Court as required by the Prison Litigation Reform Act, Plaintiff appealed two interlocutory orders to the United States Court of Appeals for the Fifth Circuit. (Dkt. ##24, 29.) Following the delay occasioned by those appeals, during which this case was stayed, the case is now reopened upon the dismissal of both appeals by the Fifth Circuit. (Dkt. ##30, 32–34.)

In his amended complaint, Plaintiff alleges that he was moved "because of alleged heat score" in the middle of winter to a cell in another area that was infested with mice and roaches. (Dkt. #19 at 4.) While housed in that cell, Plaintiff was denied the opportunity to exercise, would go four or five days without access to a shower, and had water dripping on his bed. (*Id.*) The mice ate his food and damaged his property. (*Id.*) There was "no sun very poor air circulation [and] no phone." (*Id.*) Plaintiff does not specify when he was moved to the cell in question or how long he remained there, but he signed his original complaint in the Michael Unit on February 9, 2022 (Dkt. #1 at 2), and he submitted a notice of change of address to another unit dated March 4, 2022. (Dkt. #7 at 1.)

Plaintiff sues TDCJ Director Bobby Lumpkin for cruel and unusual punishment because Plaintiff "informed him" about his move. (Dkt. #19 at 3.) He also sues the Directors of the State Classification Committee and Unit Classification Committee for "same as above," for failing to inform or explain to him why or on whose order he was moved. (*Id.*) And he sues Michael Unit Wardens Townsend and Marshall on the same basis, adding that Marshall "ignored [a] grievance" about the move. (*Id.*) He seeks unspecified money damages "for abuse," as well as an explanation and other injunctive relief. (*Id.* at 4.)

## II. Legal Standards and Preliminary Screening

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity, so his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Plaintiff is proceeding *in forma pauperis*, so his complaint is also subject to screening under section 1915(e)(2). Those statutes provide for *sua sponte* dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or

malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id.* (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather,

the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

**III. Discussion and Analysis**

Plaintiff does not state a claim for violation of his constitutional rights in connection with the alleged loss or damage to his property. The deprivation of property by state employees—whether negligent or intentional—does not violate the constitution if the state provides "a suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Texas common law allows recovery of monetary damages for loss of property that has been taken without authorization. *See, e.g.*, *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) ("In Texas, as in many other states, the tort of conversion fulfills this requirement."); *Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995). Texas statutory law also provides that inmates may recover up to $500 for lost or damaged property. *See* TEX. GOV'T CODE §§ 501.007, 501.008; TEX. CIV. PRAC. & REM. CODE § 16.003(a) (providing a two-year statute of limitations for certain causes of action). Because Texas provides an adequate post-deprivation remedy, the loss of Plaintiff's clothing and other personal items does not state a claim for any constitutional violation. *See Hudson*, 468 U.S. at 536.

Nor does Plaintiff state a claim for cruel and unusual punishment. Confinement in prison is a form of punishment subject to scrutiny under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). The Supreme Court has repeatedly stressed that prison conditions that are "restrictive or even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. Thus, the Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).

To plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that objectively "pos[e] a substantial risk of serious harm." *Id.* at 834. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted). But only "extreme deprivations" satisfy this standard. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). The prison condition in question must "be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (quotation marks and footnote omitted). When evaluating an alleged Eighth Amendment violation, "the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).

A prisoner bringing an Eighth Amendment claim based on conditions of confinement must also allege facts showing that prison officials were subjectively deliberately indifferent to his health or safety. *Id.*; *see also Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (summarizing objective and subjective prongs of an Eighth Amendment violation). The deliberate indifference

required to state an Eighth Amendment claim "is an extremely high standard to meet," *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837. Thus, the prison official "must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff's short-term confinement under the conditions he alleges does not rise to that level, either objectively or subjectively. The conditions he describes are restrictive and unpleasant, but there is no basis for either the Court or the Defendants to believe that they deprived him of a basic human need or posed a substantial risk to his health, particularly when he experienced them for only a matter of weeks. They are not even remotely comparable to the conditions in the case on which he relies (Dkt. #19 at 10), in which a prisoner was required to sleep naked in raw sewage in a cell that was "covered, nearly floor to ceiling, in 'massive amounts of feces.'" *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020). Moreover, the lack of any physical injury arising from the conditions alleged in this case bars Plaintiff from seeking any money damages, *see* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotion injury suffered while in custody without a prior showing of physical injury[.]"), and his intervening transfer moots any request for prospective injunctive relief related to his former conditions of confinement. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive relief from asbestos exposure were moot where prisoner's "transfer from the ECDC to the Dixon Correctional Institute in Jackson, Louisiana, rendered his claims for declaratory and injunctive relief moot").

To the extent Plaintiff can be understood to complain about the lack of explanation[1] or other process in connection with his move, he does not state a viable due process claim under the Fourteenth Amendment. Plaintiff characterizes the conditions in which he was temporarily housed as akin to administrative segregation, but prisoners only have a right to due process when they face punishments that constitute "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Neither a short-term placement on cell restriction (segregation) nor the other conditions Plaintiff alleges are "atypical and significant" in the prison setting. *See Antone v. Preschel*, 347 F. App'x 45, 46 (5th Cir. 2009); *Gaona v. Erwin*, 224 F. App'x 327, 328 (5th Cir. 2007); *see also Manassa v. Stewart*, No. CV 19-0519-TFM-N, 2020 WL 8254385, at *5 (S.D. Ala. Nov. 23, 2020), *report and recommendation adopted as modified*, No. 1:19-CV-519-TFM-N, 2021 WL 218001 (S.D. Ala. Jan. 21, 2021) (dismissing claim where prisoner's allegation of "an abundance of rats, roaches, gnats, flies, and other vermin" was not "atypical and significant" as required to support a due process claim).

Moreover, even if Plaintiff alleged facts that would establish a constitutional violation (which he does not), he has not alleged the personal involvement of any of the named Defendants in that violation as required to make them individually liable under Section 1983. Lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine

---

[1] Plaintiff complains of a lack of explanation for his move, but the amended complaint establishes that it was because of Plaintiff's "heat score." (Dkt. #19 at 11.) It is a matter of public record that the TDCJ maintains a "process to place certain offenders who may be at an increased risk of developing a heat-stress illness in air-conditioned housing by assigning 'every offender in the TDCJ system . . . a Heat Sensitivity Score based on their medical conditions and prescribed medications.'" *Sain v. Collier*, No. CV H-18-4412, 2019 WL 4144321, at *16 (S.D. Tex. Aug. 30, 2019). Thus, while Plaintiff may disagree with or not understand the medical judgments that led to his heat score and move to an air-conditioned building, the basis for the move was apparently explained to him.

of respondeat superior, which does not generally apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable only if he is personally involved in a constitutional deprivation, a causal connection exists between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Plaintiff here does not allege that the named Defendants played any personal role in assigning him a heat score or moving him from one cell to another. He alleges that he somehow "informed" them of the move and that they took no action, but "a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 489 (N.D. Tex. 2019). Even the alleged receipt of Plaintiff's grievance would not make any of the Defendants personally liable for any underlying violations. *See Emmons v. Painter*, No. MO:20-CV-00185-DC, 2021 WL 2832977, at *10 (W.D. Tex. May 23, 2021) ("[A]llegations that Defendants' denial of grievances evidenced both their personal involvement and a policy of deliberate indifference do not withstand pretrial screening."); *Selders v. LeBlanc*, No. CV 19-13075, 2020 WL 5097599, at *3 (E.D. La. July 1, 2020), *report and recommendation adopted*, No. CV 19-13075, 2020 WL 5095328 (E.D. La. Aug. 28, 2020) (dismissing claims against defendant who "is in charge of the jail and responded to two of [plaintiff's] grievance complaints" because " having a role in the grievance process does not create personal liability much less supervisory liability"). Plaintiff thus does not allege facts that would satisfy the personal involvement standard for these Defendants and fails to state a claim against them in their individual capacities.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's amended complaint fails to state a claim upon which relief can be granted. Dismissal is appropriate where Plaintiff has already been permitted to amend his complaint but still fails to state a viable claim. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that "once given adequate opportunity, even a pro se complaint must contain specific facts supporting its conclusions"); *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 566 (N.D. Tex. 2020) (dismissing where inmate had "already amended his complaint once" and been afforded "an opportunity to further flesh out his claims").

RECOMMENDATION

Accordingly, the undersigned recommends that Plaintiff's lawsuit be dismissed pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(b).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 15th day of November, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

9